### KENNEDY v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. March 2, 1925.)

No. 4459.

**1. Intoxicating liquors �köe275—Time for bringing suit for abatement of nuisance not limited to 60 days.**

The provision of National Prohibition Act, tit. 2, § 23 (Comp. St. Ann. Supp. 1923, § 10138½*l*), that proof of intention to continue violation of the act shall not be necessary if action to enjoin nuisance is brought within 60 days following any such violation, applies only to proceedings brought under that section, and not to abatement proceedings under section 22 (Comp. St. Ann. Supp. 1923, § 10138½k).

**2. Intoxicating liquors ⊫ö276—Finding that sales of liquor, commenced four months ago, continued held not error.**

In a suit under National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.) for abatement of a nuisance, a finding by the court that sales of liquor on the premises, shown to have been frequent four months before the suit was commenced, continued to that time, *held* not error as matter of law because based on proof as to the general atmosphere of the place, its location, fittings, furnishing, patrons, and attendants.

Appeal from the District Court of the United States for the District of Nevada; Edward S. Farrington, Judge.

Suit in equity by the United States against James H. Kennedy for abatement of nuisance. Decree for complainant, and defendant appeals. Affirmed.

Geo. B. Thatcher and Wm. Woodburn, both of Reno, Nev., for appellant.

Geo. Springmeyer, U. S. Atty., and Chas. A. Cantwell, Asst. U. S. Atty., both of Reno, Nev., and George A. Whiteley, Asst. U. S. Atty., of Carson City, Nev.

Before ROSS, HUNT, and RUDKIN, Circuit Judges.

RUDKIN, Circuit Judge. This is an appeal from a decree abating a common nuisance and closing the premises, where the nuisance was maintained for a period of one year, under section 22 of title 2 of the National Prohibition Act (41 Stat. 314 [Comp. St. Ann. Supp. 1923, § 10138½k]). The sufficiency of the testimony to support the decree is the only question presented for our consideration. As appears from the opinion of the court below, it was stipulated at the trial that all evidence given on the trial of a criminal action between the same parties should be considered as given on the trial of the abatement proceeding, but it is quite apparent that only a small part of that testimony is found in the present record. The facts are thus set forth in the opinion of the court:

"The Casino is a large establishment containing a dance hall with a number of booths, a barroom with a bar regularly fitted up for dispensing liquor; women entertainers, with living quarters adjoining the building for seven such persons, and a club room. In the basement home-brew was manufactured by defendants, and sold in the barroom. The beer seems never to have been tested by defendants to ascertain whether it contained more than the permissible amount of alcohol. Save the evidence of dispensing considerable quantities of intoxicating liquor between the 1st and 12th of May, 1923, there is no testimony of any specific violations of law on the premises since that time. Neither is there any evidence showing that intoxicating liquor was not sold or kept for sale between May 12, 1923, and September 29, 1923, when the bill in equity was filed. Furthermore, there is no evidence of any change in the business conducted on the premises, or that the defendants, or any one else, abated the nuisance existing in May, 1923, or that any one of the defendants has attempted so to do."

And again:

"It is alleged in the bill that ever since May 1, 1923, and continuously thereafter, until suit was commenced, the defendants have kept, sold, and bartered intoxicating liquor for beverage purposes on said premises. The evidence convinces me, and I so find, that the material allegations of the bill, and particularly those in paragraph 5, are true. This conclusion is based on the proof that large quantities of liquor were sold in said premises during the first 12 days of May, 1923, in flagrant violation of the National Prohibition Act; and also on the proof as to the general atmosphere of the place, its location, fittings, furnishing, patrons and attendants, and the business conducted therein."

It is first contended that there was a failure of proof because the action was not brought within 60 days following the specific violations of law disclosed by the testimony. Section 21 of title 2 of the act (Comp. St. Ann. Supp. 1923, § 10138½jj) defines a "common nuisance" as any room, house, building, boat, vehicle, structure, or place where intoxicating liquor is manufactured, sold, kept, or bartered in violation of law; section 22 (Comp. St. Ann. Supp. 1923, § 10138½k) defines the procedure for enjoining or abating the nuisance defined by section 21; and section 23 (Comp. St. Ann. Supp. 1923, § 10138½l) provides as follows:

"That any person who shall, with intent to effect a sale of liquor, by himself, his employee, servant, or agent, for himself or any person, company or corporation, keep or carry around on his person, or in a vehicle, or other conveyance whatever, or leave in a place for another to secure any liquor, or who shall travel to solicit, or solicit, or take, or accept orders for the sale, shipment, or delivery of liquor in violation of this title is guilty of a nuisance and may be restrained by injunction, temporary and permanent, from doing or continuing to do any of said acts or things.

"In such proceedings it shall not be necessary to show any intention on the part of the accused to continue such violations if the action is brought within sixty days following any such violation of the law."

[1] We agree with the court below that the 60-day limitation only applies to an injunction, temporary or permanent, against the individual who violates section 23 of the act, and that it has no application to proceedings instituted under section 22. Proceedings to enjoin or abate a nuisance under the latter section do not differ materially from abatement proceedings in general, and in such a proceeding it is incumbent on the government to allege and prove the maintenance of the nuisance at the time the proceedings are instituted and that the nuisance will continue unless abated or suppressed. On the other hand, where proceedings are instituted under section 23, the government is not required to allege or prove the violation of law at the time the proceedings are commenced or an intention to continue such violations thereafter, provided the action is brought within sixty days following the violation. For these reasons it is apparent that there has been no failure of proof because the action was not brought within 60 days.

[2] This brings us to the question of the sufficiency of the testimony to support the decree in other respects. As stated in the opinion of the court, the proof on the part of the government was confined to numerous violations of law between the 1st and 12th of May, and suit was not commenced until the following September. It is conceded that proof of the existence of a fact of a continuous nature at a particular time gives rise to a presumption that the fact exists at a subsequent time. 22 C. J. 86.

"This presumption of continuance of facts once shown to exist has been applied to afford a presumption of the continuance of life; corporate existence; conditions of bodily health or strength; mental condition, such as sanity or insanity; intention; reputation or character, as to veracity or chastity; personal or legal status; celibacy or the married state; living together or separation of husband and wife; personal habits; relations between persons, especially where contractual, as partnership, principal and agent, attorney and client, landlord and tenant, or master and servant; illicit relations; citizenship, domicile, settlement, or residence of a person; absence; occupation; the course of business dealing between persons; tenure of real or personal property, or of official or fiduciary position; tenancy in common; financial condition, such as solvency or insolvency; the condition and location of inanimate things; the collectibility of accounts; the pendency of an action shown to have been commenced; the influence of duress by threats; a designation by village trustees of a certain bank as a depositary; the exclusive use of street railroad tracks on a certain street; the existence of a gas pipe or main in front of certain premises; the inoffensive nature of a dog; a rule of a corporation; and rules for the operation of street railroads." 22 C. J. 87.

But while the presumption itself is conceded, it is contended that it does not survive after the lapse of four or five months, as in this case.

"The limits of time within which the inference of continuance possesses sufficient probative force to be relevant vary with each case. Always strongest in the beginning the inference steadily diminishes in force with lapse of time, at a rate proportionate to the quality of permanence belonging to the fact in question, until it ceases or perhaps is supplanted by a directly opposite inference. In other words, it will be inferred that a given fact or set of facts whose existence at a

particular time is once established in evidence continues to exist so long as such facts usually do exist." 22 C. J. 86.

"Hence the rule that refers to continuousness must be stated with the qualification that the presumption is that the fact or relation once proved to exist continues as long as it is usual for facts or relations of such a nature to continue. Obviously, then, the presumption would cease when the usual time for the continuance of the fact or relation has expired, and this brings a reasoning in an inverse order before such a presumption should be indulged, that is to say, there must first be evidence that a fact or relation existed, and then proof, or at least inference, from human experience, of the natural or usual length of time incident to such relation, so that no general rule can be laid down as to the length of time, and it is therefore necessarily based upon the facts in each concrete case, at which time a working rule can be applied to determine the continuity of the presumption." 2 Wharton's Criminal Evidence (10th Ed.) § 816.

The flagrant violations of the National Prohibition Act between May 1, and May 12, the general atmosphere of the place, its location, fittings, furnishing, patrons, and attendants, and the business conducted therein, satisfied the court below that the presumption continued up to the time of the commencement of the suit, and it cannot be said, as a matter of law, that the court erred in that regard. Commonwealth v. Finnerty, 148 Mass. 162, 19 N. E. 215; Shore v. United States (C. C. A.) 282 F. 857; Marshallo v. United States (C. C. A.) 298 F. 74.

It must be remembered, in this connection, that the presumption we are discussing means little more than a mere shifting of the burden of proof. Wharton's Criminal Evidence, supra.

The presumption that a man still lives or lives at a given place is readily overcome by proof of death or removal, and the presumption that a nuisance is still maintained is as readily overcome by proof of cessation or abatement. Here, the appellant offered no testimony as to either cessation or abatement, nor has he availed himself of the privilege of so doing, even after final judgment, as permitted by the decree. Under such circumstances, it cannot be said that the decree of the court below works injustice or is without support in the testimony.

After the decision directing a decree for the plaintiff, the case was reopened for the purpose of taking further testimony by stipulation of the parties, but at the instance of the government. Further testimony was then taken, showing sales of intoxicating liquor in a club adjacent to the dance hall in the Big Casino, a few days before the commencement of the present suit. The relation of this club to the Big Casino is not disclosed by the testimony, aside from the fact that there is an open space of about 15 feet between the dance hall and the club with a well-beaten path leading from the door of the dance hall to the door of the club. In the pleadings and decree the premises are simply described as the Big Casino. What that term comprises we are not advised. The court in its opinion said that the Big Casino was a large establishment containing, among other things, a club room, and if the club room referred to in the opinion was the club in which the liquor was later sold, then, of course, there was ample testimony to prove the continuance of the nuisance up to almost the day of the commencement of the action.

In support of the decree below, we would perhaps feel constrained to presume that the two clubs were one and the same; but, in any event and regardless of this, the decree is supported by competent testimony.

Affirmed.