**FESSLER et al. v. UNITED STATES.**

**BARNETT et ux. v. SAME.**

**Nos. 4284, 4285.**

Circuit Court of Appeals, Third Circuit.

March 4, 1930.

B. M. Golder (of Golder, Felger & Lemisch), of Philadelphia, Pa., for appellants.

Howard Benton Lewis, Asst. U. S. Atty., and Calvin S. Boyer, Acting U. S. Atty., both of Philadelphia, Pa.

Before WOOLLEY and DAVIS, Circuit Judges, and AVIS, District Judge.

WOOLLEY, Circuit Judge.

These appeals are from decrees entered on bills in equity filed under section 22 of title 2 of the National Prohibition Act (27 USCA § 34), abating nuisances and closing the respective premises for a year.

Preceding the bills each defendant had pleaded guilty to a violation of the act, Fessler to unlawful possession of liquor and Barnett to maintenance of a nuisance. It was on these criminal offenses that the civil nuisance suits were based. The learned trial court treated each defendant as owner of the respective premises. The appeals are limited to that part of the decrees by which the premises were closed.

These two unrelated appeals were argued together in this court on the theory that the cases are alike on the law and substantially alike on the facts. We, too, thought this was so until we read the records when we became convinced that the cases are different on the facts and that that very difference shows by contrast the correct rule of law and its proper application.

### The Fessler Case.

The facts are these:

On October 19, 1928, Fessler, upon premises owned by his father, maintained an establishment for bottling beer. Within a month his father died intestate and he became part owner of the premises.

On February 7, 1929, Fessler pleaded guilty to a count of an indictment charging unlawful possession of liquor on the former date. He was sentenced and paid a fine.

On August 1, 1929, the government filed a bill in equity against Fessler and his mother, as co-owners of the premises, for maintaining a nuisance, based on the offense of possession, etc., at the place and on the date first stated, in respect to which Fessler had pleaded guilty.

On October 11, the court tried the case and on October 17 entered the decree which is here on appeal. As it is clear that the decree finding a nuisance was adequately supported by evidence, the sole question is whether that part of the decree which ordered the premises closed for one year was properly entered. That depends on whether it, too, was supported by evidence or whether, lacking evidence, the rule which we understand the court announced should prevail, being to the effect that:

"The court is satisfied that an owner (still in possession) who has once violated the law upon the premises and used his place of business for the purposes of law violation will repeat the offense unless restrained" (by closing the place).

As we read the court's announcement from the bench, it looks very much as though it were a pronouncement of an unvarying rule to be applied against every such owner of premises, whether or not there are facts in the case other than his ownership from which the court can infer the probability of a continuance or recurrence of the nuisance. There was no evidence of violation of the law by the defendant owner after October 19, 1928, that is, no evidence of violation during the ten months that intervened between the violation on that date and the date of filing

the bill in equity, and no evidence of violation thereafter. Moreover, there were no facts introduced by the government, except that of the defendant's ownership, indicating or tending to indicate a probability that the nuisance would continue, while there was testimony by Fessler that after the filing of the bill and before decree he removed from the premises the machinery for bottling beer and sold it to junk dealers and that he then ran the place for bottling sodawater by machinery that is not capable of bottling beer. Therefore, taking the absence of evidence on the part of the government on the point of probable continuance of the nuisance, and accepting or rejecting the evidence on the part of the defendant against that probability, as the court was free to do, the record contains no evidence adequately to support the part of the decree closing the premises unless it be the bald fact of ownership. Thus the case resolves itself into the single question whether a decree of closure can be supported by the single fact that the owner, once a violator of the law, is still in possession. If answered in the affirmative, without qualifications, this would mean that in every instance of a prayer for closure in a bill in equity against an owner who violated the law by maintaining a nuisance a decree of closure can lawfully be entered against him without any evidence as to the probability of his continuing the nuisance, other than the belief that once having done wrong he will, probably, do wrong again.

██ We find ourselves slow to subscribe to this rule. Keeping in mind that this proceeding is a civil suit in equity, first to abate a nuisance and next to prevent its recurrence, Murphy v. United States, 272 U. S. 630, 47 S. Ct. 218, 71 L. Ed. 446, it is clear that the only valid purpose of such an action under section 22, tit. 2 of the Act (27 USCA § 34) is, after abatement of the nuisance, to prevent its continuance, not to inflict punishment for the offense. In other words, the purpose of such a suit, as stated in Grosfield v. United States, 276 U. S. 494, 48 S. Ct. 329, 72 L. Ed. 670, 59 A. L. R. 620, is preventive, not punitive. The validity of the equity action depends upon its civil status. To avoid invalidity of the statute by providing a criminal punishment in a civil action, the Congress was very careful to prescribe a civil remedy in the civil action by providing that the action "shall be brought" in a court of equity and be "tried as an action in equity." Very sensibly, the court of equity, as in cases under its general jurisdiction, is given power not only to abate a nuisance but to prevent its recurrence when the facts establish a fair inference of probability. When they do not sustain such an inference, the closing of premises cannot be justified as an exercise of power to abate a nuisance for then it develops into punishment for maintaining the nuisance inflicted by a court of equity. United States v. Chesebrough Mfg. Co. (D. C.) 11 F.(2d) 537, 539. So there must be some evidence from which the court can infer the probable continuance of the offense. It is true that in the case of a tenant who has been ousted or in the case of an owner who has ceased the illegal use of the premises before the decree, the ouster or cessation of illegal use is not conclusive if the evidence should furnish reasonable ground for apprehending a repetition of such use. Grosfield v. United States, supra. But that is not this case. Here there is no evidence which would cause one to apprehend that the premises would be so used again. There is simply the fact that the owner, still in possession, was the offender. That, concededly, is a fact which in itself the court can, and should, take into consideration, for having once been a conscious wrongdoer, the court may not shut its eyes to the possibility of his doing wrong again. Unquestionably the interest of such an owner in the premises has a bearing on the probabilities just as the interest of a witness affects the value of his testimony. But that is very different from holding that every owner will continue in wrongdoing, just as it would be error to hold that every interested witness is untruthful. There must be something more in the way of evidence than mere ownership to support a decree closing premises. We find none here. Therefore that part, and only that part, of the decree closing the premises is reversed.

#### The Barnett Case.

This case is similar to the Fessler case on the law, but, opposed to the views of the attorneys on both sides, we think it is not similar on the facts.

When about to enter a decree the learned trial judge said:

"The Court is of the opinion that where the owner of the premises has used them as a place for the sale of intoxicating liquor, where he has pleaded guilty of maintaining a nuisance, and where he is still in possession of the premises, that there is reasonable ground to apprehend that there will be a repetition of the illegal use of the premises.

"The testimony to the effect that since his arraignment and during his probationary period, he has refrained from the sale of liquor

on the premises, and that he has changed the character of a portion of the premises, is not sufficient, in the judgment of the Court, to affect the conclusion stated. This is not the case of a landlord out of possession whose tenant violates the law, but the violator of the law is still in possession of the premises. The Court will enter a decree as prayed for."

■ This, we understand, is the rule that the learned trial judge announced and applied in the Fessler case, in which there were no facts other than ownership by the violator of the law on which he could have apprehended a repetition of the unlawful use of the premises. In the instant case, however, it was shown by the proofs that the defendant in the equity suit was owner of the premises on January 28, 1929, when he made sales of beer which were the acts on which first the criminal action and next the civil action were based, and that after the sales of beer, after indictment, plea and sentence in the criminal action and after the institution of this civil suit, he continued to operate his bar room, ostensibly for the sale of soft drinks, yet it was not until July that he removed the beer coils. This was significant. Even then he ran his bar room, still ostensibly for the sale of soft drinks, until August 26 when he dismantled it and sold the fixtures. This was only a couple of weeks before the trial. Here was evidence aside from the single fact of the offender's ownership of the premises from which the court might reasonably apprehend that he would, unless prevented by decree, open up and continue the nuisance. The evidence, to be sure, was slight, but it was evidence; and it was evidence in addition to that of ownership and was enough. It follows that that part of the decree ordering the premises closed was adequately supported by evidence.

On the difference in the facts between this case and the Fessler case the decree is in all respects affirmed.